STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STONY ROBERT MERCER,
*Defendant-Appellant.*

Multnomah County Circuit Court
120431519; A153015

344 P3d 109

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Lagesen, Presiding Judge, and Garrett, Judge, and Wollheim, Senior Judge.

LAGESEN, P. J.

**LAGESEN, P. J.**

This appeal requires us to decide whether Ballot Measure 73 (2010),[1] which created enhanced penalties for some repeat sex offenders and intoxicated drivers, was submitted to the voters for their approval in violation of the single-subject requirement of Article IV, section 1(2)(d),[2] of the Oregon Constitution. We conclude that it was not.

The issue comes to us by way of a criminal appeal. Defendant was charged with, and convicted of, driving under the influence of intoxicants (DUII).[3] Because defendant

---

[1] Measure 73 provides:

"**Section 1.** This Act shall be known as the Oregon Crimefighting Act.

"**Section 2.** a. Any person who is convicted of a major felony sex crime, who has one (or more) previous conviction of a major felony sex crime, shall be imprisoned for a mandatory minimum term of 25 years.

"b. 'Major felony sex crime' means rape in the first degree (ORS 163.375), sodomy in the first degree (ORS 163.405), unlawful sexual penetration in the first degree (ORS 163.411), or using a child in a display of sexually explicit conduct (ORS 163.670).

"c. 'Previous conviction' includes a conviction for the statutory counterpart of a major felony sex crime in any jurisdiction, and includes a conviction in the same sentencing proceeding if the conviction is for a separate criminal episode as defined in ORS 131.505.

"**Section 3.** a. Driving under the influence of intoxicants (ORS 813.010) shall be a class C felony if the defendant has been convicted of driving under the influence of intoxicants in violation of ORS 813.010, or its statutory counterpart in another jurisdiction, at least two times in the 10 years prior to the date of the current offense.

"b. Once a person has been sentenced for a class C felony under this section, the 10-year time limitation is eliminated and any subsequent episode of driving under the influence of intoxicants shall be a class C felony regardless of the amount of time which intervenes.

"c. Upon conviction for a class C felony under this section, the person shall be sentenced to a mandatory minimum term of incarceration of 90 days, without reduction for any reason.

"d. The state shall fully reimburse any county for the county's costs of incarceration, including any pretrial incarceration, for a person sentenced under this section."

(Emphases in original.)

[2] Article IV, section 1(2)(d), provides, in pertinent part, "A proposed law or amendment to the Constitution shall embrace one subject only and matters properly connected therewith."

[3] Defendant was also convicted of reckless driving, ORS 811.140; recklessly endangering another person, ORS 163.195; and criminal driving while suspended or revoked, ORS 811.182(4). None of those convictions are at issue on appeal.

already had two DUII convictions, the offense was treated as a Class C felony under section 3 of Measure 73, codified at ORS 813.011. Before trial, defendant objected to the application of Measure 73 to his case, arguing that the measure was invalid on the ground that it "violate[d] the 'single subject' rule of the Oregon Constitution." The trial court disagreed and, after defendant was convicted again of DUII, sentenced him in accordance with the requirements of section 3 of Measure 73, that is, ORS 813.011.[4] On appeal, defendant renews his argument that Measure 73 was submitted to the voters in violation of the Article IV, section 1(2)(d), single-subject requirement. He requests that we invalidate the measure on that ground, "reverse his conviction for felony DUII[,] and remand for entry of a judgment convicting him of misdemeanor DUII and for resentencing."[5]

We review for legal error a trial court's ruling regarding an initiative measure's compliance with the single-subject requirement of Article IV, section 1(2)(d). *See State ex rel Caleb v. Beesley*, 326 Or 83, 87-93, 949 P2d 724 (1997) (*Caleb*) (applying that standard). Here, the trial court did not err when it concluded that Measure 73 satisfies the Article IV, section 1(2)(d), single-subject rule.

The Oregon Constitution contains two "single-subject rules": one for legislative acts, codified at Article IV, section 20; and one for initiative measures, codified at Article IV, section 1(2)(d).[6] The text of those provisions

---

[4] The judgment states that defendant was convicted and sentenced under ORS 813.010(5), which makes a *fourth* DUII conviction within 10 years a Class C felony. That appears to be a clerical error. On appeal, no party disputes that the conviction at issue is defendant's third DUII conviction, or that defendant was charged, convicted, and sentenced under section 3 of Measure 73, ORS 813.011.

[5] Before the voters approved Measure 73, defendant's third DUII conviction would have been treated as a misdemeanor. A fourth DUII conviction would have been designated a Class C felony, but without the mandatory minimum term of incarceration required by Measure 73. ORS 813.010(4)-(5); Staff Measure Summary, Senate Committee on Rules, SB 395-B, June 20, 2011; Official Voters' Pamphlet, General Election, Nov 2, 2010, 74.

[6] The single-subject rule for legislative acts, Article IV, section 20, was part of the original Oregon Constitution. *Armatta v. Kitzhaber*, 327 Or 250, 271, 959 P2d 49 (1998). The parallel rule for initiative measures was not. *Id.* The power to enact laws and amend the constitution through the initiative process was not reserved to the people until 1902, and it was not until 1968 that the voters approved a single-subject rule to circumscribe that power. *Id.* at 271-72.

nearly mirror one another; the single-subject rule for legislative acts mandates that "[e]very Act *shall embrace but one subject, and matters properly connected therewith*," Or Const, Art IV, § 20 (emphasis added), while the rule for initiative measures requires that "[a] proposed law or amendment to the Constitution *shall embrace one subject only and matters properly connected therewith*," Or Const, Art IV, § 1(2)(d) (emphasis added). Both provisions are aimed at the prevention of "logrolling," or

> "'the practice of inserting in one bill two or more unrelated provisions so that those favoring one provision could be compelled, in order to secure its adoption, to combine with those favoring another provision, and by this process of log-rolling the adoption of both provisions could be accomplished, when neither, if standing alone, could succeed on its own merits.'"

*Lowe v. Keisling,* 130 Or App 1, 8-9, 882 P2d 91 (1994), *rev dismissed,* 320 Or 570 (1995) (quoting *Lovejoy v. Portland,* 95 Or 459, 465, 188 P 207 (1920)).

Although the two provisions are worded differently, the Supreme Court has held that they "should be given the same meaning," *OEA v. Phillips,* 302 Or 87, 93, 727 P2d 602 (1986), and has adopted a two-part framework for evaluating whether a proposed law or constitutional amendment embraces only a single "subject" for purposes of Article IV, section 1(2)(d). *See Caleb,* 326 Or at 93 (case law interpreting both Article IV, section 20, and Article IV, section 1(2)(d) is relevant to the analysis). Under that framework, a reviewing court asks whether it can discern a "unifying principle logically connecting all provisions" in the measure, such that it can be said that the measure embraces a single subject. *See McIntire v. Forbes,* 322 Or 426, 443-44, 909 P2d 846 (1996); *see also Caleb,* 326 Or at 91. If the court cannot identify a logical unifying principle, the measure embraces more than one subject in violation of the single-subject rule, and the court's inquiry ends. *See OEA,* 302 Or at 100. If it can, then the court examines whether any "other matters" contained in the measure are "properly connected" to the unifying principle identified by the court. *See id.*; *see also Caleb,* 326 Or at 93.

That standard typically is satisfied so long as a proposed law or amendment addresses a single substantive area of law, even if it "includ[es] a wide range of connected matters intended to accomplish the goal of that single subject." *Caleb*, 326 Or at 91. Two Supreme Court decisions involving laws in the substantive area of criminal law illustrate that point. In *State v. Fugate*, 332 Or 195, 204, 26 P3d 802 (2001), the law at issue, Senate Bill (SB) 936 (1997), effected substantive legislative change in five distinct ways: (1) "directly provid[ing] various specific rights to crime victims" (in sections 2, 3, 4, 5, 6, 7, 11, 12, 13, and part of section 20); (2) "deal[ing] at various levels with the admissibility of evidence in criminal trials" (in sections 1, 22, 29, and 37); (3) "deal[ing] with release criteria respecting those accused of crimes" (sections 18 and 19, and the remainder of section 20); (4) "address[ing] criminal sentencing and orders for restitution" (in sections 14, 15, 16, 17, 23, 24, 26, 27, and 32); and (5) "mak[ing] various changes to the law respecting juries in criminal cases" (in sections 8, 9b, 21, and 25).

Notwithstanding the wide range of criminal justice matters addressed by the law, the court upheld it against a single-subject challenge. The court characterized the subject matter of the law as "the prosecution and conviction of persons accused of crime," concluding that "[t]hat subject logically connects and unifies all the provisions of SB 936, including those that create, within the process of criminal law enforcement, certain legal rights for the victims of crime, and those that deal with sentencing and restitution." *Fugate*, 332 Or at 204. In concluding that such disparate provisions were united by the single principle of "the prosecution and conviction of persons accused of crime," the court, in effect, recognized that a law that addresses exclusively matters of criminal law has but one subject for purposes of Article IV. The court reached a similar result in *Caleb*. There, the court held that Ballot Measure 11 (1994), which created mandatory sentences for a range of offenses listed in the measure, comported with the single-subject requirement of Article IV, section 1(2)(d), because it embraced the single subject of "mandatory imprisonment of any person, 15 years of age or older, who is convicted of a listed felony on or after April 1, 1995." *Caleb*, 326 Or at 92.

By contrast, a law that includes provisions addressing distinct and unrelated substantive areas of law risks violating the single-subject limitation. In *McIntire*, the sole case in which an Oregon appellate court has invalidated a law under the single-subject rule, the law at issue, Senate Bill (SB) 1156 (1995), did eight different things across a range of unrelated substantive areas of law:

> "SB 1156 *** (1) provides state funding [and land use procedures] for light rail, (2) expands the availability of card-lock service stations, (3) promotes 'regional problem solving' in land use matters, (4) regulates confined animal feeding, (5) preempts local pesticide regulation, (6) adopts new timber harvesting rules, (7) grants immunity to shooting ranges for 'noise pollution,' and (8) protects salmon from cormorants."

322 Or at 444 (brackets in original; some internal quotation marks omitted). "[U]nable to discern a principle unifying those eight topics"—beyond a unifying principle so broad that it would encompass the entire "universe" of potential legislative actions—the court held that the law violated the single-subject requirement of Article IV, section 20. *Id.* at 445-46.

We are unable to meaningfully distinguish Measure 73 from the laws upheld against single-subject challenges in *Caleb* and *Fugate*. In particular, similar to Measure 11, Measure 73 creates enhanced punishments for listed offenses (certain sex offenses and DUII) for repeat offenders. It does so by categorizing a third DUII conviction as a felony—making it a more serious offense than it otherwise would be—and by creating mandatory minimum sentences for certain repeat sex and DUII offenders. The "unifying principle" that connects the different provisions of the measure can be articulated in much the same way that the Supreme Court articulated the unifying principles for the laws at issue in *Caleb* and *Fugate*: "enhanced punishments for offenders repeatedly convicted of specified crimes." In the light of our ability to identify and articulate a unifying principle, *Caleb* and *Fugate* would appear to compel us to reject defendant's single-subject challenge.

Defendant nonetheless asserts that we should view Measure 73 as addressing two subjects: (1) the creation of

a new crime of felony DUII for third-time offenders, subject to a mandatory minimum term of incarceration of 90 days; and (2) the imposition of mandatory minimum sentences of 25 years for major felony sex crimes for second-time offenders. Although defendant concedes that "some 'subjects' could encompass both of Measure 73's topics, such as 'repeated criminal acts,'" defendant argues that, under *McIntire*, any such subject would be "too 'broad and general'" to comply with Article IV, section 1(2)(d).

*McIntire* does not stand for that proposition. Although the Supreme Court did, in that case, suggest that some purported "subjects" might be too broad to express a unifying principle, *McIntire* was, as the court put it, an "extreme case." 322 Or at 445. There, because the challenged law was a legislative act, the court, after concluding that it could not itself discern a unifying principle, turned to the relating clause in the title of the act. The relating clause provided simply that the act was one "[r]elating to the activities regulated by state government." *Id.* The court held that that statement failed to identify and express a unifying principle, because it was "so global that it d[id] little more than define the universe with respect to which the legislature is empowered to act." *Id.*

This is not, in the words of the *McIntire* court, an "extreme case." Instead, it falls in line with *Caleb* and *Fugate*. As with the laws at issue in those cases, we can discern and articulate a discrete unifying principle connecting the provisions of Measure 73 ("enhanced punishments for offenders repeatedly convicted of specified crimes"). That subject identifies (1) the precise sphere of regulation (namely, the criminal justice system); (2) the targeted persons (repeat offenders); and (3) the intended outcome (enhanced punishments). Such a subject is not so "global" as the proposed unifying principle rejected in *McIntire*, nor is it even as broad as the subject identified and approved in *Fugate*—"the prosecution and conviction of persons accused of crime." *Fugate*, 332 Or at 204. In other words, although defendant asserts that "[n]o unifying principle logically connects [the] two topics [of Measure 73] without being so broad as to encompass nearly everything in the legislative universe," that simply is not the case.

In short, we can discern a single unifying principle connecting the provisions of Measure 73. Defendant does not suggest that the measure embraces "other matters" that are not "properly connected" to the identified unifying principle, and we see none. Accordingly, we conclude that Measure 73 was not adopted in violation of the single-subject requirement of Article IV, section 1(2)(d), and affirm the judgment of the trial court.

Affirmed.