No. 585          November 8, 2023          101

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of S. H. A.,
aka S. H. P., aka S. T., aka S. T., a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. G. J.,
*Appellant.*

Jackson County Circuit Court
20JU02316; A181035 (Control)

In the Matter of K. O. A.,
aka P. J. R. J., a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. G. J.,
*Appellant.*

Jackson County Circuit Court
20JU06985; A181037

Timothy C. Gerking, Judge.

Argued and submitted October 10, 2023.

Kristen G. Williams argued the cause and filed the briefs for appellant.

Erin K. Galli, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Egan, Presiding Judge, and Kamins, Judge, and DeVore, Senior Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Mother appeals the juvenile court's adoption and implementation of a Tribal Customary Adoptive Agreement (TCAA), assigning error to the judgment as to each of her two children. *See* ORS 419B.656(1) ("As used in this section, 'tribal customary adoption' means the adoption of an Indian child, by and through the tribal custom, traditions or law of the child's tribe, and which may be effected without the termination of parental rights."). Because two of mother's arguments in support of those assignments are not preserved, we do not consider them on appeal. We otherwise affirm.

This case involves mother's two children, S and P; they are Indian children within the meaning of Oregon Indian Child Welfare Act (ORICWA). *See* ORS 419B.600 - 419B.665. In 2021, the court asserted dependency jurisdiction over both children. In June 2022, the court held a hearing and changed S's and P's permanency plans from reunification to a TCAA because mother had not made sufficient progress for S and P to safely return to her care. We affirmed that judgment earlier this year in *Dept. of Human Services v. M. G. J.*, 326 Or App 426, 532 P3d 905 (2023). In January 2023, while that appeal was pending, the Pit River Tribe established and approved a TCAA, which outlined the transfer of mother's parental rights to the adoptive parents. After the hearing, the juvenile court adopted and implemented the TCAA over mother's objections.

Mother contends that the juvenile court erred in entering a TCAA "transferring all parental rights or obligations not specially retained in the judgment" as it relates to both of her children. Mother makes three arguments: (1) the juvenile court failed to make its own best interest determination; (2) mother's due process rights were violated; and (3) the juvenile court erred by accepting documents that were prepared by the Department of Human Services (DHS). However, for the reasons explained below, we conclude that mother's first two arguments are not preserved. Mother also does not seek plain error review. We therefore do not consider those arguments on appeal.

ORAP 5.45(1) provides that "[n]o matter claimed as error will be considered on appeal unless the claim of error

was preserved in the lower court \*\*\*." Preserving a claim "is not something that can be explained by a neat verbal formula." *State v. Walker,* 350 Or 540, 548, 258 P3d (2011). A party must articulate enough information to an opposing party or a trial court "to be able to understand [a party's] contention and to fairly respond to it." *Id.* at 552. With those preservation rules in mind, we address the first two arguments.

In mother's first argument, she contends that the juvenile court did not make its own best interest determination as required by ORS 419B.656(3)(a)(B), and instead, the court simply adopted the tribe's best interest determination. *See* ORS 419B.656(3)(a)(B) ("The juvenile court shall accept an order or judgment for tribal customary adoption that is filed by the Indian child's tribe if \*\*\* [t]he court finds that the tribal customary adoption is in the child's best interests."). She asserts that she preserved that argument below by asserting that: (1) "[t]here's been no accommodation of contact with S and P's other sibling, J, who "will not be adopted and is under the jurisdiction of a juvenile court in another county"; (2) mother now has stable housing and employment; (3) mother has unsupervised contact with her other daughter, J; and (4) she "continues to disagree" with the TCAA and expressed that there should be testimony at the hearing. Those contentions failed to preserve mother's current argument that the juvenile court did not make its own best interest determination for two reasons. First, mother never raised an argument that ORICWA required the juvenile court to make an independent best interest finding. Second, if and to the extent she is challenging the best interest determination that the court *did* make, she never alerted the court that ORICWA required something different. Rather, mother offered argument about her own progress, the resolution's lack of explicit mention of S and P's relationship with their sibling, and a general dissatisfaction with the lack of testimony at the hearing. Those arguments did not preserve the legal argument that she now makes on appeal. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (requiring that an objection is "specific enough to ensure that the court can identify its alleged error with enough

clarity to permit it to consider and correct the error immediately, if the correction is warranted.").

In mother's second argument, she contends that the juvenile court erred because it did not afford her a constitutionally adequate process before transferring her parental rights. Mother never attempted to introduce any evidence or call any witnesses at the hearing. According to mother, the due process argument was sufficiently preserved because she complained that it was a "rubberstamp" hearing and expressed a general desire for more evidence. However, those statements did not signal to the juvenile court that she was raising a constitutional due process challenge; rather, her argument indicated that she had generalized concerns with the way in which the hearing was conducted. *See State v. Blasingame*, 267 Or App 686, 692-93, 341 P3d 182 (2014) (explaining that even though the "defendant referred to 'due process' generically, the gravamen of his objection was simply that he disagreed with the case law" and the defendant's "general reference to the legal concept of 'due process' was insufficient to preserve his appellate challenge").

Finally, in mother's third argument, she asserts that the juvenile court erred because it should not have accepted the documents prepared by DHS; rather, she contends that those documents can only be accepted if they were prepared by the tribe. *See* ORS 419B.656(3)(a) (providing the considerations required for the juvenile court to "accept an order or judgment for tribal customary adoption that is filed by the Indian child's tribe"). We review a trial court's interpretation of a statue for legal error. *State v. Urie*, 268 Or App 362, 363, 341 P 3d 855 (2014).

Prior to the hearing, DHS submitted two proposed documents in each child's case: (1) an "order accepting order/judgment of tribal customary adoption"; and (2) a "judgment of tribal customary adoption." Mother argues that "the tribe" did not file the "order or judgment for the tribal customary adoption" as contemplated by ORS 419B.656, because those documents were filed by DHS. In response, DHS disputes mother's assertions, and alternatively argues that even if the court did err, the error was harmless. We agree that any error was harmless. *See* ORS 19.415(2) ("No judgment shall

be reversed or modified except for error substantially affecting the rights of a party."); *see also Doe v. First Christian Church of the Dalles*, 328 Or App 283, 290, ___ P3d ___ (2023) (explaining that "[d]espite the court's error here, we cannot reverse the judgment unless the party seeking reversal can show that the evidentiary error substantially affected the party's rights"). Here, mother's rights were not substantially affected for two reasons. First, the tribal representative was present during the hearing and articulated that "[t]he Tribe *** supports this fully *** [and] there are no objections to the State's representation *** of the Tribe's agreement." Second, nothing in mother's arguments elucidate or otherwise dispute how the judgment would be different had the tribe filed the documents.

Affirmed.